IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JOHN BURNS, ADMINISTRATOR OF THE
ESTATE OF SAMANTHA BURNS, and
SAMANTHA BURNS, individually,

                Plaintiffs,

v.                                    CIVIL  ACTION  NO.  3:05-0963

HUNTINGTON MALL COMPANY,
a general partnership, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a motion by Defendants Huntington Mall Company, Cafaro Company, J.C. Penny Properties, Inc., and National Security Consultants, Inc. to dismiss the Complaint filed by John Burns, Administrator of the Estate of Samantha Burns, and Samantha Burns, individually.  For the following reasons, the Court **DENIES, in part,** and **GRANTS, in part,** Defendants' Motion to Dismiss.

**I.**
**FACTS**

This case involves the tragic kidnaping and murder of Samantha Burns by Chadrick E. Fulks and Branden L. Basham in November of 2002 after they escaped from Hopkins County Jail in Hopkins County, Kentucky, and went on a multi-state crime spree.  During the crime spree, Mr. Fulks and Mr. Basham also kidnaped and murdered Alice Donovan in South Carolina.  Ultimately, Mr. Fulks and Mr. Basham were captured and indicted for their crimes.  An Indictment charging Mr. Fulks and Mr. Basham with a number of crimes, including carjacking resulting in the death of Ms.

Burns, was returned and filed by the federal grand jury in West Virginia on June 10, 2003.[1] Although the body of Ms. Burns has never been recovered, a presumptive death certificate was issued by the State of West Virginia to her parents on September 10, 2003.[2]

Before facing their charges in West Virginia, Mr. Fulks and Mr. Basham were convicted of their crimes in South Carolina and were sentenced to death.  Mr. Fulks and Mr. Basham then were brought to West Virginia where they pleaded guilty to carjacking and murdering Ms. Burns.  Mr. Fulks pleaded guilty and was sentenced on June 30, 2005, and Mr. Basham pleaded guilty and was sentenced on July 25, 2005.  During their pleas and sentencings, both Mr. Fulks and Mr. Basham stated that Ms. Burns was abducted from the Huntington Mall parking lot.  Plaintiffs assert it was not until these allocutions that they first learned of the details of Ms. Burns' death and the extent of the Huntington Mall and its affiliates' involvement, which Plaintiffs claim contributed to Ms. Burns' death.  Thereafter, on December 7, 2005, Plaintiffs brought suit against Defendants on the following grounds: (1) reckless and/or negligent failure to provide adequate security–assumption of duty; (2) reckless and/or negligent failure to provide adequate security; (3) negligence of defendant National Security Consultants, Inc. in its capacity as provider of security services; and (4) breach of contract–third party beneficiary.  Defendants assert that Plaintiffs should have known of sufficient facts to assert their claims against them by September 10, 2003, the date

---

[1]The Indictment also charged Mr. Fulks and Mr. Basham with being felons in possession of firearms, possession of stolen firearms, and interstate transportation of a stolen motor vehicle.

[2]The body of Ms. Donovan also has never been recovered.

the presumptive death certificate was issued.  Therefore, Defendants move to dismiss the Complaint for failing to comply with the relevant statute of limitations.

## II.
## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defending party may move to dismiss if the pleading party has failed to state a claim for which relief may be granted.  A Rule 12(b)(6) motion tests the sufficiency of the pleading.  It does not resolve factual disputes, "the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citations omitted).  In considering the motion, the claims must be viewed in the light most favorable to the non-moving party and all allegations accepted as true. *Id*.  Dismissal is appropriate only when it appears beyond a doubt that no set of facts would entitle the pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III.
## DISCUSSION
## A.
## Statute of Limitations

West Virginia Code § 55-7-6(d) provides that wrongful death actions must "be commenced within two years after the death of such deceased person[.]" W. Va. Code § 55-7-6(d), in part.  However, Plaintiffs argue that the statute of limitations in this case should be tolled under the discovery rule.  As explained in syllabus point 1 of *Cart v. Marcum*, 423 S.E.2d 644 (W. Va. 1992):  "Generally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs; under the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." Syl. Pt. 1, *Cart*.  In *Bradshaw v. Soulsby*, 558 S.E.2d 681 (W. Va. 2001), the West Virginia Supreme Court extended the application of the

-3-

discovery rule to wrongful death cases. 558 S.E.2d at 688.  In doing so, the court held in syllabus point 8:

> In a wrongful death action, under the discovery rule, the statute of limitation contained in *W. Va. Code*, 55-7-6(d) [1992] begins to run when the decedent's representative knows or by the exercise of reasonable diligence should know (1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death.

Syl. Pt. 8, *Bradshaw*.  Under this standard, Defendants argue that the statute of limitations should not be tolled because Plaintiffs knew no later than September 10, 2003, that Ms. Burns was presumed dead and that Mr. Fulks and Mr. Basham were the wrongdoers.  In addition, Defendants cite *McCoy v. Miller*, 578 S.E.2d 355 (W. Va. 2003) (per curiam), for their position that Plaintiffs had an affirmative duty to investigate their claims and, if they had conducted such inquiry, it would have put them on constructive notice that they may have claims against the present Defendants. *See McCoy*, 578 S.E.2d at 359 (citation omitted) (stating "[w]here a plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding that potential breach").

Plaintiffs argue, however, that although they knew in 2003 that Mr. Fulks and Mr. Basham were the likely wrongdoers, they did not know that Defendants' alleged actions and inactions may have contributed to Ms. Burns' death until the allocutions.  In addition, Plaintiffs state

that it would have been fruitless to attempt to gather evidence from Mr. Fulks and Mr. Basham before their guilty pleas because, up until that time, both men were proclaiming their innocence and there was no way for them to know the details of Ms. Burns' abduction until Mr. Fulks and Mr. Bashams' confessions in June and July of 2005.  Therefore, Plaintiffs assert that, under the discovery rule, the suit was timely filed against the current Defendants in December of 2005.

Defendants insist that, because Plaintiffs knew of Mr. Fulks and Mr. Basham's identities as wrongdoers, the statute of limitations began running as to Plaintiffs' claims against Defendants under the criteria announced in *Bradshaw*.  However, the Court agrees with Plaintiffs that merely because Plaintiffs were aware of Mr. Fulks and Mr. Basham's identities and their role in Ms. Burns' death, it does not necessarily mean that they were aware of Defendants' alleged role. In fact, assuming the facts in the light most favorable to Plaintiffs, as this Court must on a motion to dismiss, the Court must assume that Plaintiffs were unaware of Defendants' alleged role until the allocutions.  In support of their position, Defendants also point to language found in *Gaither v. City Hospital, Inc.*, 487 S.E.2d 901 (W. Va. 1997), which provides:

> Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the "discovery rule" applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.

487 S.E.2d at 907 (quoting Syl. Pt. 3, *Cart v. Marcum*, 423 S.E.2d 644 (W. Va. 1992).  Thus, Defendants argue that, even if Plaintiffs did not know the identities of Defendants, the identities of all the potential wrongdoers are not required for the statute of limitations to begin to run.  This Court

recently addressed this very issue in *Benson v. CSX Transportation, Inc.*, No. 3:05-0384 (S.D. W. Va. May 17, 2006).

In *Benson*, the plaintiff alleged he was injured when hydrochloric acid leaked from a tank car. *Slip op.* at *1.  The plaintiff sued his employer and various others for his injuries. *Id.* at *1-2.  During discovery, however, the plaintiff first learned that another company, Rescar, Inc., had repaired a leak in the tank car just four days before the plaintiff was injured. *Id.* at *2.  The plaintiff then filed a Second Amended Complaint adding Rescar as a defendant.  Rescar moved to dismiss on the grounds that the statute of limitations had run. *Id.*

Although the Court in *Benson* noted the above language in *Gaither*, which quotes syllabus point 3 of *Cart*, the Court also recognized that the *Gaither* decision modified the application of the discovery rule applied in *Cart*. *Id.* at  *5-6 (citing *McCoy*, 578 S.E.2d at 358; *Miller v. Monongalia County Bd. of Educ.*, 556 S.E.2d 427, 433 n.3 (W. Va. 2001)).  In *Gaither*, the Court quoted from its previous decision in *Hickman v. Grover*, 358 S.E.2d 810 (1987), where the court stated:

> "Justice is not done when an injured person loses his right to sue before he discovers if he was injured or who to sue. . . .
>
> In products liability cases, the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know, (1) that he has been injured, (2) the identity of the maker of the product, and (3) that the product had a causal relation to his injury. This rule in products liability cases will allow the plaintiffs a fair chance to sue,

while upholding the purposes behind the statute of limitations.

In a progressive or creeping disease or injury, many plaintiffs will often not realize that they were actually injured. *See, e.g., Louisville Trust Co. v. Johns-Manville Products Corp.*, 580 S.W.2d 497 (Ky.1979) (asbestos). Other plaintiffs will realize they are injured, but have no reason to connect the product with the injury. *See e.g., Mack v. A.H. Robins Co.*, 573 F.Supp. 149 (D.Ariz.1983) (Dalkon Shield). In both instances, it would be a miscarriage of justice to hold that the plaintiff's claim was barred by the statute of limitations. A plaintiff does not have enough information to sue until he knows that he has been injured, he knows the identity of the maker of the product, and he knows that the product had a causal relation to his injury. Under the new rule, these claims would be protected from the bar of the statute of limitations."

*Gaither*, 487 S.E.2d at 908-09 (quoting *Hickman*, 358 S.E.2d at 813-14 (footnote from *Hickman* omitted). The court then modified this quote to apply to all torts and held in syllabus point 4:

In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syl. Pt. 4, *Gaither*. Under this rule, the court in *Gaither* explained that the statute of limitations is tolled "until a plaintiff, acting as a reasonable, diligent person, discovers the essential elements of a possible cause of action, that is, discovers duty, breach, causation and injury." *Id*. at 909. Therefore, in *Gaither*, the court determined that, despite the fact the plaintiff knew his leg was

-7-

amputated following a motorcycle accident and he knew the hospital owed him a duty of care in treating him for his injuries, the plaintiff nevertheless could maintain a lawsuit against the hospital filed more than two years after his injuries where there was nothing to indicate within the two-year period that the hospital "may have breached its duty and failed to exercise proper care, or that . . . [the hospital's] conduct may have contributed to the loss of his leg."  487 S.E.2d at 910.

Applying this same standard to the facts in *Benson*, this Court likewise found that, where there is no evidence to suggest the plaintiff knew that Rescar was a potential tortfeasor within the two-year period, the Court would not grant a motion to dismiss. *Slip. op.* at \*10-11.  As here, Rescar also argued that if the plaintiff would have exercised reasonable diligence in investigating his claim, he would have discovered the potential claim against it.  However, as the Court in *Benson* indicated, this issue should be left for a jury to decide and not for the Court to resolve on a motion to dismiss. *Id.* at \*10-11.

The Court in this case sees little reason why the same analysis utilized in *Benson* does not apply to the facts before it.  In both cases, the plaintiffs knew the identities of some of the alleged wrongdoers but assert they were unaware of the wrongdoing of the defendants who moved to dismiss based on statute of limitations grounds.  As in *Benson*, the Court finds that the mere fact Plaintiffs were aware of the alleged wrongdoing of Mr. Fulks and Mr. Basham does not let Defendants off the hook for their alleged role.  At the very least, the issue of whether reasonable and diligent investigation by Plaintiffs would have uncovered Defendants and their role within the two-year period is an issue to be fleshed out during the discovery process and inappropriate on a motion

to dismiss.[3]  Indeed, such issues often are ultimately resolved by a jury, not by the court. *See generally* Syl. Pt. 3, *Stemple v. Dobson*, 400 S.E.2d 561 (W. Va. 1990) (holding "[w]here a cause of action is based on tort . . ., the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury"); Syl. Pt. 4, *Hill v. Clarke*, 241 S.E.2d 572 (W. Va. 1978) (holding "[t]he question of when plaintiff knows or in the exercise of reasonable diligence has reason to know of medical malpractice is for the jury"); *compare with Goodwin v. Bayer Corp.*, 624 S.E.2d 562, 567 (W. Va. 2005) (per curiam) (stating "summary judgment can and should be granted on the basis of an applicable statute of limitations when no genuine issue of material fact exists as to whether the statute of limitations has been violated").  Therefore, the Court **DENIES** Defendants' Motion to Dismiss on the grounds the action was filed outside the statute of limitations.

**B.**
**Whether Cafaro Company and National Security**
**Consultants, Inc. are Proper Defendants**

Defendants Cafaro Company and National Security Consultants, Inc. next assert that they should be dismissed because neither entity was involved with the Huntington Mall at the time Ms. Burns was abducted.  Both of these Defendants submitted affidavits in support of their positions.  However, Plaintiffs submitted an affidavit and evidence which they believe support their contention of these Defendants' involvement.  Clearly, the Court finds the parties have presented

---

[3]In *Benson*, the Court found there was nothing before the Court to suggest the plaintiff even knew of Rescar's existence.  Here, it is unclear to the Court at this point if Plaintiffs learned that Ms. Burns was abducted from the Huntington Mall parking lot during the allocution or whether they merely learned of Defendants' alleged role.  In either event, the Court finds it is of no consequence with respect to the current Motion to Dismiss.

a factual issue which precludes dismissal.  Accordingly, the Court **DENIES without prejudice** the

Motion to Dismiss on this ground and **GRANTS** the parties limited discovery on this issue.  The

Court **DIRECTS** the parties to complete discovery on this issue on or before **August 23, 2006.**

Thereafter, Defendants Cafaro Company and National Security Consultants, Inc. may, if they so

choose, renew their motion to dismiss.

### C.
### Whether the Decedent has an
### Independent Cause of Action

The style of the Complaint lists Ms. Burns' father, John Burns, as the administrator

of her estate, and Ms. Burns individually as Plaintiffs.  Defendants assert that John Burns is the only

proper real party in interest because Ms. Burns cannot assert a claim in her individual capacity under

West Virginia Code § 55-7-6(a).   This section provides, in relevant part:

> Every such action shall be brought by and in the name
> of the personal representative of such deceased person who
> has been duly appointed in this state, or in any other state,
> territory or district of the United States, or in any foreign
> country, and the amount recovered in every such action shall
> be recovered by said personal representative and be
> distributed in accordance herewith.

W. Va. Code § 55-7-6(a).  Therefore, Defendants argue that Ms. Burns individual claims must be

dismissed.

In Response, Plaintiffs argue that Ms. Burns can sue in her individual capacity for

her pre-death pain and suffering under West Virginia Code § 55-7-8 and the West Virginia Supreme

Court's decision in *McDavid v. United States*, 584 S.E.2d 226 (W. Va. ).  West Virginia Code § 55-

7-8 states:

> Where an action is brought by a person injured for damage caused by the wrongful act, neglect or default of any person or corporation, and the person injured dies as a result thereof, the action shall not abate by reason of his or her death but, his or her death being suggested, it may be revived in the name of his or her personal representative, and the complaint shall be amended so as to conform to an action under sections five and six of this article, and the case proceeded with as if the action had been brought under said sections. Additionally a separate and distinct cause of action may be brought, and if brought, shall be joined in the same proceeding for damages incurred between the time of injury and death where not otherwise provided for in said sections five and six. In either case there shall be but one recovery for each element of damages: Provided, That nothing in this section shall be construed in derogation of the provisions of section twelve of this article.

W. Va. Code § 55-7-8.


The Court finds the issue presented in *McDavid*, however, was not whether a decedent can bring an individual claim for pre-death pain and suffering, but rather whether the decedent's beneficiaries could recover for such damages where the decedent did not file a personal injury action before his or her death. 584 S.E.2d at 227-28.  On certified question from this Court, the West Virginia Supreme Court answered in the affirmative and stated that such damages are recoverable.  Defendants do not dispute that Mr. Burns can maintain an action for Ms. Burns' pre-death pain and suffering, they merely claim that it cannot be brought in Ms. Burns' individual capacity.  Upon consideration, the Court agrees.

-11-

Clearly, under West Virginia Code § 55-7-6(a), wrongful death claims must be filed in the name of the personal representative.  Likewise, under West Virginia Code § 55-7-8, claims for personal injuries filed before death "shall not abate . . . [but] may be revived in the name of his or her personal representative[.]" W. Va. Code § 55-7-8, in part.  Plaintiffs have cited no cases in which the West Virginia Supreme Court has held that a decedent can bring a claim in his or her individual capacity for pre-death pain and suffering where the claim was filed at the same time as the wrongful death claim.  In fact, in looking at the individual counts in the Complaint filed here, each count concludes with "Plaintiff John Burns demand[ing] judgment[.]" None of the counts include a demand from Ms. Burns individually.  Under these circumstances, the Court declines to find that a decedent can bring an individual claim under West Virginia law.  Therefore, the Court **GRANTS** Defendants' Motion to Dismiss with respect to Ms. Burns being named in her individual capacity.  However, as conceded by Defendants, Plaintiff John Burns, as Administrator of Ms. Burns' estate, may maintain the action for Ms. Burns' pre-death pain and suffering.

**IV.**
**CONCLUSION**

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss with regard to the statute of limitations, **DENIES without prejudice** Defendants Cafaro Company and National Security Consultants, Inc.'s Motion to Dismiss; and **GRANTS** Defendants' Motion to Dismiss with respect to Ms. Burns being named in her individual capacity.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:          May 30, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE